Terrance J. WESSLER,
Plaintiff–Appellant,

v.

Terrell A. WESSLER,
Defendant–Respondent.

No. 41659.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 15, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 12, 1980.

Darrill S. Beebe, St. Charles, for plaintiff–appellant.

Stephen L. Kennedy, Claude C. Knight, St. Charles, for defendant–respondent.

DOWD, Presiding Judge.

This is an appeal by plaintiff from the trial court's judgment in favor of the defendant on her counterclaim.

The facts are as follows. Plaintiff and defendant were divorced on May 26, 1977. The parties' marital property was divided by a settlement agreement. At the time of the divorce, defendant lived in the family residence. Subsequently, she moved from the family home taking her share of the marital property. Plaintiff contends that in doing so defendant took items of property not specifically awarded her. Consequently, on October 27, 1977 plaintiff filed a petition claiming breach of the marital agreement. On November 15, 1977 defendant answered and counterclaimed alleging abuse of process and claiming damages. The damages claimed were in excess of the Magistrate Court's jurisdiction and the cause was certified to the Circuit Court of St. Charles County. Amended pleadings were filed by both parties.

The jury trial commenced on January 31, 1978 and resulted in a judgment for defendant on her amended counterclaim awarding her $2,000 in actual damages and $5,000 in punitive damages. The jury found against plaintiff on his cause of action. Plaintiff then filed a motion for judgment notwithstanding the verdict or for a new trial. That motion was never ruled upon due to the fatal illness of the presiding judge. Pursuant to Rule 78.06 the motion was deemed denied for all purposes ninety days after it was filed. Plaintiff then filed this appeal in which he alleges three points of error. We shall address plaintiff's second point only as that point is dispositive of this appeal.

Plaintiff claims in his second point, that the trial court should have directed a verdict in his favor on the defendant's counterclaim because the defendant failed to show any actions by the plaintiff which demonstrate perverted use of process subsequent to the filing of the suit. To determine whether the trial court should have granted a directed verdict in plaintiff's favor we review the evidence and inferences therefrom in the light most favorable to the defendant and determine from this point of view whether a submissible case has been made by the defendant. *Green v. Crundun Martin Mfg. Co.*, 575 S.W.2d 930, 932 (Mo. App.1978).

The elements of abuse of process are set out in *Barnard v. Barnard*, 568 S.W.2d 567 (Mo.App.1978). To sustain a claim for abuse of process there must be an illegal and unauthorized use of process, an ulterior motive for the use of such process and resulting damages. *Id.* at 571. It must be shown that process has been used to accomplish an unlawful end or to compel the defendant to do something which he could not be legally compelled to do. *Id.* at 571. The essence of abuse of process is not commencement of an action without justification but is the misuse of process justified in itself for an end other than that which it was designed to accomplish. No liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be. *See Moffett v. Commerce Trust Co.*, 283 S.W.2d 591, 599 (Mo. 1955). The improper purpose usually manifests itself as coercion to obtain some collateral advantage where the party seeking the advantage uses the process as a threat. *Flynn v. Songer*, 399 S.W.2d 491, 494 (Ky. 1966). The use or rather the misuse of the process becomes a form of extortion wherein the defendant attempts to gain an advantage collateral to the subject matter of the suit. A classic example of abuse of process occurred in the oft–cited case of *White v. Scarritt*, 341 Mo. 1004, 111 S.W.2d

18 (1937) wherein the defendants utilized a taxpayers suit to extort payments of a fixed proportion of sales prices from the plaintiffs in the hopes of getting the suit dismissed before the options for a new court house site had expired. *Id.* 111 S.W.2d at 23–24. Clearly the taxpayers had the right to initiate such proceedings but abused the process by using the suit to extort money from the plaintiffs. *Moffett v. Commerce Trust Co., supra* at 600. Similarly in the case of *National Motor Club of Missouri v. Noe,* 475 S.W.2d 16 (Mo.1972) the court held that defendants' counterclaim stated a claim to relief for abuse of process. Defendants alleged in their motion that plaintiffs had filed suits against the defendants in two other states wherein substantially the same claim was asserted against defendants. In their supporting affidavit defendants claimed that plaintiffs' president admitted that the purpose for filing the additional suits was to coerce defendants into expending great sums of money in attorney fees to defend the suits. *Id.* at 23. In their claim for damages defendants alleged that the additional suits were filed not to collect a judgment against the defendants but for the collateral purpose of harassing defendants, to drive them out of business, to force United's agents to terminate their association with United and return to National, to coerce certain contractors to cease performing services for United, to interfere with United's customer relations, to prolong litigations to bankrupt defendants, to interfere with contractual relationships and United's right to compete with National, etc. *Id.* at 24.

The case at bar is different from the *White* and *National Motor Car* cases in that the defendant has failed to demonstrate that the plaintiff used the process for a purpose other than that for which it was intended. Plaintiff merely filed suit for damages for loss of items to which he believed he had a right. Whatever the plaintiff's motive in this case, the end he sought, damages for lost property, was not unlawful nor beyond the intended scope of the process used because it was used by plaintiff for the purpose of establishing his rights in these items. See *Moffett supra* at

600. Even assuming plaintiff's motives were bad, that alone is not sufficient to sustain a finding that the plaintiff abused process. While an ulterior motive may be inferred from an abuse of process the converse does not hold. *Moffett supra* at 599 [quoting 1 W. PROSSER, THE LAW OF TORTS 857 (4th ed. 1971)].

In the absence of any evidence that plaintiff's use of legal process was unauthorized or that he used such process to extort something from the defendant or force her to do something she could not legally be forced to do, such unauthorized use being a necessary element of the tort, we find that the defendant did not make a submissible case and that the trial court erred in not directing a verdict for plaintiff on defendant's counterclaim.

That portion of the trial court's judgment awarding defendant damages on her counterclaim is reversed. Each party is ordered to pay one–half of the court costs.

REINHARD and CRIST, JJ., concur.