Thomas WELLS, et ux.,
Plaintiffs-Appellants,

v.

Adolphus Busch ORTHWEIN, et al.,
Defendants-Respondents.

No. 45463.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 10, 1984.

Gerald L. Birnbaum, O'Fallon, for plaintiffs-appellants.

Reginald P. Bodeux, St. Charles, for defendants-respondents.

KELLY, Judge.

Thomas and Mary Wells, husband and wife, prosecute this appeal from a judgment of the Circuit Court of St. Charles County, Missouri, taxing costs against them and awarding Nancy M. Orthwein $1,000.00 actual damages and $2,000.00 punitive damages on her counterclaim for abuse of process. We reverse and remand to the trial court to reconsider the taxing of costs.

The Wellses instituted this action against James Busch Orthwein, Adolphus Busch Orthwein and Nancy Orthwein, the wife of Adolphus Busch Orthwein, on March 9, 1979 by filing a two count petition; one for breach of contract and the other for quantum meruit. On June 15, 1979, the trial court dismissed Count I of appellants' petition and on July 16, 1979, the appellants filed their amended petition. The amended petition was in three counts alleging breach of contract, a quantum meruit claim, and a fraud count. On August 27, 1979, Mrs. Orthwein filed a counterclaim which she contends alleged the abuse of civil process by the Wellses. On November 6, 1979, Count I of the appellants' amended petition was dismissed by the trial court. On March 10, 1980, Adolphus B. Orthwein and James B. Orthwein filed a separate first amended counterclaim in five counts; breach of contract, quantum meruit, conversion, property damage and fraud. Trial was had to a jury and at the close of all of the evidence the appellants dismissed their claim against Mrs. Orthwein and submitted to the jury their claim for quantum meruit against Adolphus B. Orthwein and James B. Orthwein. Adolphus and James Orthwein submitted their claims for fraud and breach of contract and Mrs. Orthwein submitted her claim for abuse of process against the appellants.

The jury returned a verdict for the appellants on their quantum meruit claim against Adolphus B. and James B. Orthwein and awarded them the sum of $50.00 as the reasonable value of goods and services furnished to Adolphus B. and James B. Orthwein. The jury also found in favor of the appellants on the counterclaim of Adolphus B. and James B. Orthwein. On Nancy Orthwein's counterclaim for abuse of process, the jury found for Mrs. Orthwein and awarded her $1,000.00 actual and $2,000.00 punitive damages. All costs were taxed against appellants.

On December 28, 1981, appellants filed a motion to recover costs, but said motion was denied. They also filed alternative motions for judgment n.o.v. and/or for a new trial on Mrs. Orthwein's counterclaim, but this too was denied.

Appellants present to this Court four Points Relied On as grounds for setting aside the judgment of the trial court. They claim the trial court erred: (1) in failing to grant their Motion to Recover Costs against James B. and Adolphus B. Orthwein; (2) in failing to grant their Motion for New Trial on Nancy Orthwein's counterclaim because the evidence did not support a claim of abuse of process; (3) in overruling their Motion for Judgment in accordance with their Motion for Directed Verdict with respect to Nancy Orthwein's counterclaim because the evidence does not support a finding of any conduct of the appellants which constituted a perversion of process; and (4) in the giving of Instruction No. 10, Mrs. Orthwein's verdict-director on her counterclaim.

We initially consider appellants' third Point Relied On; whether the trial court erred in overruling their motion for judgment n.o.v., Rule 72.01 V.A.M.R.

A motion for judgment n.o.v. presents the same issues as a motion for a directed verdict at the close of all of the evidence; i.e., whether plaintiff made a submissible case. In reviewing a trial court's ruling on a motion for judgment n.o.v., and whether Mrs. Orthwein made a submissible case, we consider the evidence in a light most favorable to the respondent and accept such evidence as true, giving the respondent the benefit of all reasonable inferences reasonably drawn therefrom, and we disregard appellants' evidence except insofar as it aids respondent's case. *Dockery v. Mannisi*, 636 S.W.2d 372, 376[6, 7] (Mo.App.1982).

It has been said that some confusion exists as to the nature and essentials of actions for abuse of process; that much of the confusion has resulted from a want of consistency and accuracy in distinguishing between the act of maliciously procuring the issuance of process and the act of abusing process when issued. Where the matter complained of concerns the issuance of process, the action is either strictly or by analogy one for malicious prosecution. The gist of an action for abuse of process is the improper use of process after it has been issued. 80 A.L.R. 580–581.

The general rule is that no right of action exists for damages resulting from the initiation of a civil action, unless the action was prosecuted maliciously and without probable cause, or there was an abuse of process. If the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint there is no abuse even if the plaintiff had an ulterior motive in bringing the action, or if he knowingly brought suit upon an unfounded claim. However, if the suit is brought for a collateral purpose, there is abuse of process. 1 Am.Jur.2nd Abuse of Process, § 13 Institution and Prosecution of Civil Actions, p. 260.

The law in Missouri is well settled. To sustain an action for abuse of process the facts must demonstrate an illegal and improper use of such process that is not warranted or authorized, an ulterior motive in exercising such process, and damages. *Wessler v. Wessler*, 610 S.W.2d 650, 651[2] (Mo.App.1980).

The test employed is whether the process has been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he could not be compelled to do legally. Or, stated somewhat differently, the privilege of process may not be used for an unlawful purpose such as using the litigation to extract money or anything of value from another. *National Motor Club of Missouri, Inc., v. Noe, et al.*, 475 S.W.2d 16, 23–25 (Mo.1972).

Mrs. Orthwein's counterclaim alleged that the appellants pleaded that she was an owner of the Hedgefield farm in Count I of their petition; that on August 16, 1979, they admitted under oath during the course of and taking of their depositions that they were told and knew that Adolphus and James Orthwein were the sole owners of the property and that they had full knowledge that she was not an owner of the property *prior* to the filing of the lawsuit; that at the time appellants filed their pleadings they had full knowledge that those portions of their pleadings were without any factual basis, were untrue and meritless; that, nevertheless, appellants allowed their pleadings to remain pending in court, not for the purpose of obtaining a judicial determination of a claim to relief requested in said petition, but rather "for the sole and primary" purpose of extracting from the defendants the sum of $14,000.00 which they demanded be paid to them prior to the filing of the lawsuit.

These allegations, that appellants knew that they had no justiciable claim against Mrs. Orthwein when they filed their lawsuit, do not allege a cause of action for abuse of process; they sound more as a

pleading in malicious commencement of a civil suit. *Moffett v. Commerce Trust Company,* 283 S.W.2d 591, 602[17] (Mo. 1955); *Boyer v. Carondelet Savings & Loan Ass'n,* 633 S.W.2d 98, 101[7] (Mo. App.1982).

To plead a claim for abuse of process the pleading must set forth ultimate facts establishing the following elements; the defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; that the defendant had an improper purpose in exercising such illegal, perverted, or improper use of process; and damage resulted. The phrase "use of process" as employed in that context refers to some willful, definite act not authorized by the process or aimed at an objective not legitimate in the proper employment of such process. *Boyer v. Carondelet Savings & Loan Ass'n, supra,* l.c. 101[6] (Mo. App.1982).

To sustain an action for abuse of process plaintiff must present sufficient evidence to support the allegations in his petition stating a cause of action for abuse of process. The test employed is whether process had been used to accomplish some unlawful end or to compel the opposite party to do some collateral thing which he could not be compelled to do legally. *Owen v. Owen,* 642 S.W.2d 410, 414[8, 9] (Mo.App.1982). The essence of abuse of process is not the commencement of an action without justification but is the misuse of process for an end other than that which it was designed to accomplish; no liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be. Even were we to assume the plaintiffs' motives in bringing the lawsuit were bad, that alone is not sufficient to find appellants guilty of abuse of process. While an ulterior motive may be inferred from an abuse of process, the converse does not follow. *Wessler v. Wessler,* 610 S.W.2d l.c., 651–652[2, 3, 4].

Viewing the evidence in a light most favorable to respondent and accepting such evidence as true, giving the respondent the benefit of all reasonable inferences reasonably drawn therefrom, and disregarding appellants' evidence except insofar as it aids respondent's case, the jury could have found the following facts. This dispute had its origin in an oral agreement of employment entered into by the appellants and Adolphus Busch Orthwein and James Busch Orthwein in July, 1973, whereby the appellants were employed to be caretakers of Hedgefield, a farm situated in St. Charles County, Missouri. The appellants entered upon the performance of their duties as caretakers in September, 1973, and continued in this capacity until sometime in November of 1978, after they had notified Adolphus B. Orthwein by letter of August 16, 1978, that they were exercising their option under the contract to give him ninety-days notice prior to terminating their contract of employment. Respondent was not an owner of Hedgefield farm, and that title to the farm was in Adolphus and James Orthwein and had been since they inherited the farm from their parents in 1956. Appellants knew Mrs. Orthwein had no interest in the farm when they instituted this lawsuit.

With respect to the alleged demand for $14,000.00, the evidence established that sometime after Adolphus had received the letter of August 16, 1978, notifying him that appellants were terminating their contract of employment, he visited with them. During this visit Mr. Wells informed him that "there was this house, if he'd have held it in Kirkwood it would have been worth fourteen thousand dollars more today than it was when they sold it and that they had bought a new place and he was going to get the fourteen thousand dollars out of me one way or another." Mrs. Orthwein testified that this demand was never made to her at any time either prior to or subsequent to the institution of this lawsuit.[1]

---

1. Count III of appellant's Amended Petition, one for damages for false statements and misrepre-

The evidence is clear that all that the appellants did in this case is institute a lawsuit and pursue it to its authorized conclusion. *Wessler v. Wessler, supra,* l.c. 651(3).

We conclude that respondent neither pled nor made a submissible case of abuse of process and the trial court erred in denying appellants' motion for a directed verdict n.o.v.

Appellants also complain of the trial court's denial of their motion to recover costs against Adolphus B. Orthwein and James B. Orthwein. They argue that since they prevailed in their quantum meruit claim against Adolphus B. and James B. Orthwein as well as on the counterclaim filed against them for fraud and breach of contract the taxing of costs in the case is governed by Rule 77.01, which provides that "in civil actions, the party prevailing shall recover her costs against the other party, unless otherwise provided in the rules or by law."

Respondents on the other hand cite § 514.090 RSMo 1978 in support of the trial court's ruling. This section reads: "Where there are several counts in any petition, and any of them be adjudged insufficient or a verdict, or any issue joined therein, shall be found for the defendant, costs shall be awarded at the discretion of the court."

On July 15, 1979, the trial court dismissed Count I of appellants' petition. Appellants filed their amended petition on July 16, 1979. On November 6, 1979, respondents' motion to dismiss Count I of appellants' amended petition was sustained. On December 9, 1981, respondents' motion for directed verdict at the close of appellants' evidence was sustained as to Count III—the fraud count. At the close of all of the evidence appellants, on December 11, 1981, dismissed their remaining claim in quantum meruit against Nancy

Orthwein in Count II of their amended petition. The trial court exercised its discretion and taxed the cost against appellants.

 The general rule is that in the absence of an abuse of discretion the Court of Appeals will not disturb the taxing of costs. *Mechanics' American Nat. Bank v. Rowell,* 182 S.W. 989[6] (Mo.1916).

 At the time the trial court exercised its discretion, however, there was a jury verdict in favor of Mrs. Orthwein on her counterclaim so that she was the prevailing party on her counterclaim. This fact may have influenced the trial court in taxing the costs of the entire case against appellants. In view of the holding of this court reversing the judgment entered on that verdict in behalf of Mrs. Orthwein, we are of the opinion that the trial court should be afforded an opportunity to reconsider its ruling on appellants' motion to retax the costs.

We do not reach the other Points Relied On because they become moot by reason of the decision reached with respect to Mrs. Orthwein's counterclaim.

We therefore reverse the judgment of the trial court in favor of Mrs. Orthwein on her counterclaim and remand the cause to the trial court with directions to set aside the judgment on said counterclaim and its order denying appellants' motion for judgment n.o.v. and to enter orders sustaining appellants' motion for judgment n.o.v. and directing a verdict for the appellants on said counterclaim for the reason that Mrs. Orthwein did not make a case of abuse of process. We further direct the trial court to reconsider the taxing of costs in this cause, taking into consideration the fact that appellants' prevailed in the counterclaim of Mrs. Orthwein.

PUDLOWSKI, P.J., and SMITH, J., concur.

---

sentation, was based upon an allegation that the Orthweins induced the appellants to sell their former residence in Kirkwood because the Orthweins were fearful that they would lose appellants' services and in reliance on certain repre-

sentations made to them by the Orthweins they sold their home and were required to pay an interest penalty of $2,291.25. Appellants prayed for $2,291.25 consequential damages and $50,000.00 punitive damages on this Count.